*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT TAYLOR,

        Plaintiff-Appellant,

v

SOO HOTELS, INC., SOO HOTEL, INC., and
HAMPTON INN-SAULT STE MARIE, also known
as TDH & ASSOCIATES, INC.,

        Defendants-Appellees.

UNPUBLISHED
May 16, 2024

No. 364329
Chippewa Circuit Court
LC No. 21-016730-NO

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant, Soo Hotel, Inc., which owned and operated defendant Hampton Inn-Sault Ste Marie, also known as TDH & Associates, Inc., in this slip-and-fall action.[1] We reverse the trial court order and remand for further proceedings.

Plaintiff was a testing automotive engineer for General Motors (GM) who arrived at defendant's hotel in Sault Ste Marie, Michigan, on January 3, 2019, to test drive GM vehicles in ice and snow. He had stayed at the same hotel the winter of the year before for this same purpose, and stayed for approximately three months. He woke up around 6:00 a.m. on January 4, 2019, and was planning on exiting the hotel to start his car to warm up, and then come back inside for breakfast. He testified that the weather that morning was cold but it was not snowing, and the parking lot had a light covering of snow. He rode the elevator down to the main floor with another engineer staying in the hotel, Robert Bruner, and they walked to a second exit door that was closer to the parking lot than the main entrance. The second exit has an interior and exterior door with a small vestibule in between. Bruner had at least one suitcase with him, and struggled with the

---

[1] As Soo Hotel is the only defendant that participated in the lower court proceedings as well as this appeal, it solely will be referred to as "defendant" herein. Soo Hotels, Inc., appears to be a separate entity.

interior door, so plaintiff stepped around Bruner to open the exterior door for him. Although the exterior door had a window, Bruner's luggage was blocking plaintiff's view. Plaintiff took one step out the door and hit the pavement, immediately feeling pain in his leg. He told Bruner to call 911. He noticed the pavement where he fell was covered in ice a quarter to half an inch thick, and there was no salt down.

Bruner left and returned with two female hotel employees. One of the employees grabbed a bucket of salt kept in the vestibule and started spreading salt around plaintiff's head where he lay on the pavement. Plaintiff testified that one of the employees said, " 'This sidewalk re-froze again. It's always refreezing.' " Bruner testified that right above the exterior door of the second entrance there were typically icicles on the roof, so when it warmed up the icicles melted in front of the door then refroze at night, and that area typically looked wet. He had stayed at the hotel 8 to 10 times prior, and used that door frequently. He said it looked wet that day, and there was no salt down when usually that area is salted. Brenda Brownlee, one of the hotel employees working the front desk that day, attested that the cement approach was shoveled and salted before plaintiff's fall that occurred around 6:30 a.m. She did not observe ice when she encountered plaintiff, but also said it looked wet. Plaintiff was taken to the hospital, and had surgery the next day. He had a spiral fracture of his tibia and fibula—the bones in his lower leg just above his ankle. Months later when his bones had not healed, he had a second surgery.

Plaintiff filed suit, alleging negligence and premises liability. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that black ice was open and obvious, and therefore, defendant's duty to protect plaintiff from unreasonable risks of harm caused by dangerous conditions on the land did not apply to plaintiff when he encountered the black ice. Nor were there any special aspects to preclude application of the open and obvious doctrine. Plaintiff responded that the condition was not open and obvious, special aspects existed, and summary disposition was inappropriate. Relying on caselaw standing for the proposition that black ice is an open and obvious hazard, the trial court granted defendant's motion. Plaintiff moved for reconsideration, which the trial court also denied. Plaintiff now appeals, asserting that under the new framework for premises-liability claims provided in *Kandil-Elsayed v F&E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023), summary disposition was improper. We agree.

A trial court's decision to grant or deny summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "The moving party must first specifically identify the issues as to which it believes there is no genuine issue as to any material fact, and has the initial burden of supporting its position with affidavits, depositions, admissions, or other admissible documentary evidence." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks, citations, and brackets omitted). When this burden is met, the burden shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Id*. The nonmoving party may not rely on mere allegations or denials in the pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing

party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed*, 512 Mich at 110. The *Kandil-Elsayed* Court altered the legal framework applied to premises-liability claims by overruling *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), overruled by *Kandil-Elsayed*, 512 Mich 95 (2023), which previously required that the open and obvious doctrine be considered as part of a defendant's duty of care. *Kandil-Elsayed*, 512 Mich at 153. The Supreme Court explained that the *Lugo* Court erred by holding that the open and obvious danger doctrine related to a land possessor's duty because this was inconsistent with Michigan caselaw and statutes "articulating Michigan's shift from contributory negligence to comparative fault." *Id*. at 144. Rather, the Supreme Court declared that whether a condition is open and obvious is relevant to the element of breach, and assuming an actionable premises-liability claim has been established, whether the plaintiff's damages should be reduced based on comparative fault. *Id*. at 143-145, 148-149.

The *Kandil-Elsayed* Court also overruled the special-aspects exception to the open and obvious doctrine "to the extent that it departed from the anticipation-of-harm standard in § 343A of the Second Restatement [of Torts]." *Id*. at 147. Previously, courts engaged in a narrow analysis of whether an alleged dangerous condition was effectively unavoidable or posed an unreasonable risk of harm. *Id*. Under the new framework, the fact-finder must consider whether the defendant should have anticipated the harm despite the obvious nature of the dangerous condition. *Id*. Similarly, this question shall be considered in regard to breach rather than duty. *Id*.

> To summarize, a land possessor owes a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams* [*v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988)]. If the plaintiff establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty. Our decision does not alter the standard of reasonable care owed to an invitee, meaning that it's not necessary for land possessors to heed the advice in Justice VIVIANO's dissent to "immediately . . . rectif[y]" hazards on their property to avoid liability. Rather, as has always been true, a land possessor need only exercise *reasonable* care under the circumstances. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Kandil-Elsayed*, 512 Mich at 148-149 (second alteration in original).]

The application of these new standards in *Kandil-Elsayed* was also to a plaintiff that slipped and fell in a snow and ice-covered parking lot. *Id*. at 149. The Supreme Court noted that there was no dispute that the plaintiff was an invitee to whom the defendant owed "a duty to exercise

reasonable care to protect . . . from an unreasonable risk of harm caused by a dangerous condition of the land." *Id*. (quotation marks and citation omitted). This duty extended to hazards arising from ice and snow, and required that "reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of the injury to the invitee." *Id*. at 150 (quotation marks and citation omitted). As to breach, the Supreme Court determined that questions of fact remained regarding the reasonableness of the defendant's conduct because the record lacked information about when it started to snow or whether it stopped when the plaintiff was injured. *Id*. The Supreme Court also concluded that a question of fact existed whether the ice and snow were open and obvious and, if so, whether the defendant should have anticipated that an invitee might nevertheless be harmed. *Id*.

Here, the trial court granted summary disposition to defendant, concluding that black ice was open and obvious. The trial court heard and decided this motion before the *Kandil-Elsayed* opinion was issued. However, because the open and obvious nature of a dangerous condition no longer precludes the existence of a duty, *id*. at 143-144, summary disposition for want of a material question of fact regarding duty cannot be upheld in the wake of *Kandil-Elsayed*. Rather, that decision made clear that the existence of a duty owed by a defendant depends on the plaintiff's status as a trespasser, licensee, or invitee on the property. *Id*. at 111-112. "An invitee is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Id*. at 596-597 (quotation marks and citation omitted; alterations in original). There is no dispute that as a paying guest of defendant's hotel, plaintiff was an invitee. Thus, the duty defendant owed plaintiff was the same as the duty owed in *Kandil-Elsayed*, *id*. at 150, "to take reasonable care to protect against the hazards of the natural accumulation of ice and snow on the property."

Whether a defendant breached its duty of care depends on questions of fact properly submitted to a jury, but may be decided on a motion for summary disposition when there are no genuine issues of material fact. *Id*. at 148 n 28. "[T]he open and obvious nature of a danger—i.e., whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection—is relevant to the defendant's breach and the plaintiff's comparative fault." *Id*. at 144 (quotation marks and citation omitted). The standard for assessing whether a danger is open and obvious remains objective. *Id*. However, viewing the evidence in the light most favorable to plaintiff, questions of fact exist regarding breach and whether the ice was open and obvious. *Id*. at 150-151; *Glasker-Davis*, 333 Mich App at 229.

Defendant provided an affidavit from one of the employees working at the time of plaintiff's fall, Brownlee, who attested that before 6:30 a.m. that day, the cement approach to the side entrance was shoveled and salted. Around 6:30 a.m., she was alerted and encountered plaintiff on the cement approach, and there was light snow accumulation just before. Brownlee did not observe ice on the cement approach, but said that it had a "darkened, 'wet' appearance." Bruner testified that he had stayed at the hotel 8 to 10 times prior, and used the second entrance door frequently. He also testified that right above the exterior door of the second entrance there were typically icicles on the roof, so when it warmed up the icicles melted in front of the door then refroze at night, and that area typically looked wet. It looked wet that day, and there was no salt down; however, usually that area is salted. Lastly, plaintiff testified that after he fell, one of the hotel employees started spreading salt that was kept between the interior and exterior door around

plaintiff's head where he lay on the pavement. Plaintiff testified that one of the employees said, " 'This sidewalk re-froze again. It's always refreezing.' " Based on this evidence, reasonable minds could disagree about whether defendant took appropriate measures to reduce the hazard posed by the ice outside the second entrance and whether an average person with ordinary intelligence would have discovered it upon casual inspection. See *Kandil-Elsayed*, 512 Mich at 150-151. As such, defendant was not entitled to summary disposition under MCR 2.116(C)(10). *Id*. at 151.

The trial court order granting defendant summary disposition is reversed, and this matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien